UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITIMORTGAGE, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CV01863 JAR |
| ) | |
| ALLIED MORTGAGE GROUP, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This diversity action for breach of contract is before the Court on Plaintiff's Motion to Compel Defendant to Respond to Discovery Requests (ECF No. 28), Defendant Allied Mortgage Group, Inc's Notice of Motion to Compel Disclosure (ECF No. 39), and Plaintiff's Motion to Strike Portions of Defendant's Reply Brief (ECF No. 42). These motions are fully briefed and ready for disposition.

**I.   Background**

Plaintiff CitiMortgage, Inc. ("CMI") purchased, resold and serviced residential mortgage loans on the secondary loan market. (Complaint ("Compl."), ¶1). In turn, Defendant Allied Mortgage Group, Inc. ("Allied") originated and resold residential mortgage loans. (Id.).

Beginning no later than 2004, Allied sold loans to CMI, pursuant to a "Correspondent Agreement Form 200", a "Delegated Underwriting Addendum to the Form 200", and a "Bulk Purchase Amendment to the Form 200" (collectively, the "Agreement"). (Id., ¶2). Allied, however, sold at least nine (9) loans to CMI that did not meet various requirements under the Agreement. (Id., ¶¶4, 27). These loans were defective in that they were based upon material misrepresentations, included inaccurate information, and/or did not meet Fannie Mae, Freddie Mac, FHA, VA and/or

HUD requirements, among other problems.  (Id.).  CMI notified Allied that these loans did not comply with the Agreement, and demanded cure.  (Id., ¶¶5, 28).  The Agreement provides that CMI had the unilateral right to demand that Allied repurchase loans that did not conform with the Agreement's requirements.  (Id., ¶6).  Specifically, Section 11 of the Form 200 provides:

> If CMI, in its sole and exclusive discretion, determines any Loan purchased pursuant to this Agreement:
>
> (I) was underwritten and/or originated in violation of any term, condition, requirement or procedure of this Agreement or the CMI Manual in effect as of the date CMI purchased such Loan;
>
> (ii) was underwritten and/or originated based on any materially inaccurate information or material misrepresentation made by the Loan borrower(s), [Defendant], [Defendant's] directors, officers, employees, agents, independent contractors and/or affiliates or any other party providing information relating to said Loan;
> . . .
> [Defendant] will, upon notification by CMI, correct or cure such defect within the time prescribed by CMI to the full and complete satisfaction of CMI. If, after receiving such notice from CMI, [Defendant] is unable to correct or cure such defect within the prescribed time, [Defendant] shall, at CMI's sole discretion, either (I) repurchase such defective Loan from CMI at the price required by CMI ("Repurchase Price"), or (ii) agree to such other remedies (including but not limited to additional indemnification and/or refund of a portion of the Loan purchase price) as CMI may deem appropriate.

(Id., ¶23).  Allied has refused to repurchase these 9 loans.  (Id., ¶¶6, 31).

CMI filed this action for breach of the Agreement, seeking damages in excess of $1,300,000.00.  (Id., ¶46).  Allied asserts affirmative defenses, including the doctrine of *in pari delicto*, unclean hands, breach of the implied covenants of good faith and fair dealing, unconscionability, and that the contract was one of adhesion.  (Answer and Affirmative Defenses of Allied Mortgage Group, Inc. to Plaintiff's Complaint, ECF No. 13).

## II.     CMI's Motion to Compel

A.  Standard

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Upon a showing by the requesting party that the discovery is relevant, the burden is on the party resisting discovery to explain why discovery should be limited. Liberty Mut. Fire Ins. Co. v. Centimark Corp., No. 4:08CV230, 2009 U.S. Dist. LEXIS 19007, at *2 (E.D. Mo. Mar. 4, 2009) (citing Rubin v. Islamic Republic of Iran, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004)). "Bare assertions that the discovery requested is overly broad, unduly burdensome, oppressive, or irrelevant are ordinarily insufficient to bar production." Liberty Mut. Fire Ins. Co., 2009 U.S. Dist. LEXIS 19007, at *2-3 (E.D. Mo. Mar. 4, 2009) (citing St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000)).

B.  Disputed Discovery Requests

Allied refuses to respond to two categories of discovery requests, financial requests and other-lawsuit requests. The financial requests seek Allied's audited financial statements for the last three (3) years (Request for Production ("RFP") 11) and Allied's profit and loss statements for the last three (3) years (RFP 12). The other-lawsuit requests seek any lawsuit relating to the subject matter of this lawsuit or Allied's "business practices with respect to loan origination, solicitation, underwriting, servicing, or sales in which you have been a party." (RFP 13; see also Interrogatory 2).

1.  Financial Requests

Allied claims that CMI is not entitled to discovery of Allied's financial information because it is irrelevant. CMI seeks financial information from March 15, 2008 through March 15, 2011. Allied claims that this information is irrelevant to CMI's decision to engage in business with Allied because CMI terminated their Agreement on August 28, 2008. In other

words, Allied claims that the discovery for the time period requested would have no bearing on CMI's decision to purchase loans under the Agreement.

In addition, Allied claims that it has not put its financial condition at issue. Allied notes that it has not asserted a counterclaim for bad faith. Moreover, Allied asserts that its unconscionability affirmative defense only refers to the disproportionate bargaining power between the parties and does not concern Allied's financial condition.

Finally, Allied claims that the enforceability of the Agreement is in dispute so CMI cannot claim that it is entitled to documents pursuant to the Agreement.

In response, CMI states that the Allied is required to provide the financial documents pursuant to the Agreement. CMI notes that under Section 2(f) of the Agreement, Allied represented that it is solvent and, under Section 2(f) of the Agreement, Allied represented that it would allow CMI to periodically investigate the financial status of Allied. The Agreement also provided that Allied's representations survived the Agreement. See Section 2®. Thus, Allied's representation that it is solvent and its agreement to provide documentation proving its solvency are ongoing.[1]  The Court finds that Allied is required to provide this information pursuant to the terms of its Agreement with CMI.

The Court also finds that Allied's financial condition is relevant to its affirmative defenses. Allied's affirmative defense that CMI has acted in bad faith requires Allied to come before this Court in good faith. Richard Short Oil Co. v. Texaco, Inc., 799 F.2d 415, 423 (8th Cir. 1986)(party alleging a violation of the duty of good faith and fair dealing must come before the court free from bad faith). Thus, any breach of the Agreement by Allied is relevant to its affirmative defense of bad faith. Further, the Court finds that the affirmative defense of

---

[1]CMI, however, did not make similar representations to Allied.

- 4 -

unconscionability implicates Allied's financial condition. Financial condition, in addition to other factors, could relate to any purported inequity in the parties' bargaining power. See Geldermann & Co. v. Lane Processing, Inc., 527 F.2d 571, 576 (8th Cir. 1975)(analyzing the party's net worth and business sophistication in determining whether a liquidated damages provision was unconscionable). CMI may conduct discovery regarding Allied's financial condition, as it is relevant to its bargaining power.

With respect to Allied's argument about the dispute regarding enforceability of the Agreement, CMI notes that it does not have to prove that it ultimately will win the lawsuit in order to obtain discovery. CMI simply must prove that the documents are relevant. CMI argues that the requested discovery seeks to establish whether Allied breached the representations and warranties. (ECF No. 31, p. 8). CMI claims that these warranties and representations induced it to have a business relationship with Allied. (Id.). Based upon the warranties and representations in the Agreement, whether or not it is ultimately found to be enforceable, Allied's financial documents are relevant.

Accordingly, the Court orders Allied to produce the financial documents responsive to Requests for Production 11 and 12.

        2.        Other-Lawsuit Requests

Allied claims that the other-lawsuit request is overbroad. Allied asserts that CMI's request for lawsuits related to "business practices with respect to loan origination, solicitation, underwriting, servicing, or sales in which you have been a party" seeks documents far beyond the scope of this litigation. Allied also notes that CMI has refused to provide similar information regarding lawsuits to CMI. Finally, Allied claims that CMI's requests seek information that is obtainable by either party; Allied states that the information requested is publicly available and easily accessible to CMI.

In response, CMI states that the language of its discovery request tracks the language of paragraph 2(m) of the Agreement. (ECF No. 31, p. 6). Section 2(m) of the Agreement requires Allied to notify CMI if it "is named as a party or becomes involved in any material litigation." CMI argues that the document request and interrogatory, as stated, seek "material" lawsuits in the context of the parties' mortgage-loan purchase Agreement. (ECF No. 31, p. 7).

The Court agrees that CMI's request, as written, is overbroad. CMI's request would relate to virtually any lawsuit to which Allied is a party. The Court, therefore, limits CMI's request to lawsuits related to stated income products, which are at issue in this litigation.

With respect to Allied's claim that CMI has not provided information regarding its own litigation, the Court notes that the Agreement does not impose the same disclosure obligations on CMI as it does on Allied. Under the Agreement, Allied is obligated to apprise CMI of any lawsuits, but a reciprocal obligation is not imposed upon CMI. Therefore, the mere fact that CMI has not provided this information to Allied does not excuse Allied's failure to respond to CMI's discovery request.

Finally, with respect to Allied's claim that CMI can obtain this publicly-available lawsuit information, the Court finds that Allied, nevertheless, is in the best position to identify and produce lawsuits related to this litigation. Allied shall produce other lawsuits that are related to the instant lawsuit and that involve stated income products.

### III.   Allied's Motion to Compel Disclosure

Allied claims that CMI has wrongfully withheld documents related to two requests for production. Allied seeks "[a]ny and all Communications between Allied and CMI prior to the execution of the Loan Purchase Agreement" (RFP 26), and "[a]ll Documents regarding CMI's

creation, developing and marketing of its Stated Income Loan Products" (RFP 43).  Allied contends that it is entitled to the information requested in RFPs 26 and 43 because they seek evidence regarding the parties' "reasonable expectations in light of the parties' purposes of contracting" which is demanded by the covenant of good faith and fair dealing.  (ECF No. 41, p. 2).  That is, Allied claims that the requested documents are relevant to its affirmative defense that CMI acted in bad faith in making representations about "Stated Income Loans."

CMI asserts that these requests are irrelevant, overbroad, and burdensome.  (ECF No. 40, p. 2).  The Court agrees that Allied is not entitled to discovery regarding the drafting and development of CMI's guidelines because this information is irrelevant in a breach of contract case.  Section 14 of the Agreement provides that "[t]his Agreement ... contains the entire agreement of the parties and supersedes all previous agreements ... between the parties hereto.  Any representations, promises or agreements not contained in this Agreement shall have no force or effect."  Extraneous matters related to pre-contract negotiations are not relevant to whether there was a breach of the Agreement.  See CitiMortgage, Inc. v. First Cal. Mortg. Co., No. 4:10CV1498, 2011 U.S. Dist. LEXIS 154568, at *5 (E.D. Mo. Nov. 29, 2011)("First California's document requests should relate to the loans at issue and how CitiMortgage exercised its right under the Agreement to demand repurchase of these loans.").  Thus, Allied's request is beyond the scope of this litigation.

Allied also claims that the documents are relevant to an ambiguity in the Agreement. Allied contends that Section 2(I) is in conflict with Section 11, upon which CMI relies.  in a well-reasoned opinion, Magistrate Judge Noce rejected that argument:

> Section 2(I) and § 2202 are representation and warranty sections, the terms of which are limited to each subsection. Section 2(I) and § 2202 are breached when a correspondent knows or should have known that loan documents contain misstatements, misrepresentations, or omissions but nonetheless submits the defective documents to CitiMortgage. Section 11(ii) sets forth one set of

circumstances in which CitiMortgage can demand a correspondent cure or repurchase a loan, specifically, upon CitiMortgage determining that the loan was underwritten or originated based on a misstatement, misrepresentation, or omission. Section 11(ii) is breached when a correspondent fails to cure or repurchase the loan, and applies regardless of the correspondent's knowledge.

That § 2(I) and § 2202 are limited to those instances where the correspondent knows or should have known of the misstatement, misrepresentation, or omission does not conflict or create an ambiguity when read with § 11(ii). ...

Citimortgage, Inc. v. Just Mortg., Inc., No. 4:09 CV 1909, 2012 U.S. Dist. LEXIS 43522, at *38-39 (E.D. Mo. Mar. 29, 2012).  The Court agrees with this rationale and finds no ambiguity exists between §2(I) and §11(ii).  The Court denies Allied's Motion to Compel.

### IV.     CMI's Motion to Strike Portions of Allied's Reply Brief

In its Motion to Strike (ECF No. 42), CMI asks the Court to strike portions of Allied's reply brief in support of its Motion to Compel.  In Allied's Reply, it claimed that the requested discovery was related to an ambiguity in the parties' Agreement.  CMI asserts that Allied raised this argument for the first time in its Reply, and that the argument is groundless because the Agreement is not ambiguous.  (ECF No. 42, p. 1).

Rule 12(f) states in pertinent part, that: "Upon motion made by a party …the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike, however, "'are viewed with disfavor and are infrequently granted.'" Stanbury Law Firm, P.A. v. IRS, 221 F.3d 1059, 1063 (8th Cir. 2000)(quoting Lunsford v. United States, 570 F.2d 221, 229 (8th Cir. 1977)).

As discussed herein, the Court denies Allied's Motion to Compel based upon the substance of its claims.  Accordingly, the Court denies the Motion to Strike as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Defendant to Respond to Discovery Requests (ECF No. 28) is **GRANTED**, as set forth herein.

**IT IS FURTHER ORDERED** that Defendant Allied Mortgage Group, Inc's Notice of Motion to Compel Disclosure (ECF No. 39) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike Portions of Defendant's Reply Brief (ECF No. 42) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant Allied Mortgage Group, Inc. shall supplement its discovery responses in accordance with this Court's Order within fifteen (15) days of the date of this Order.

Dated this 1st day of May, 2012.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE